**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | |
|---|---|
| Kimberly Lee, o/b/o K.J.L., ) | Civil Action No. 5:14-cv-01356-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Kimberly Lee ("Plaintiff"), on behalf of her minor daughter, K.J.L., filed this action pro se seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (ECF No. 1.)

This matter is before the court for review of the Report and Recommendation (the "Report") of United States Magistrate Judge Kaymani D. West, issued in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a) D.S.C. (ECF No. 38.) On July 8, 2015, the Magistrate Judge recommended affirming the Commissioner's final decision denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Id. at 26.) Plaintiff timely filed her Objection to Magistrate's Report and Recommendation (the "Objections"), which Objections are currently before the court. (ECF No. 41.) For the reasons set forth below, the court **ACCEPTS** the Report and **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for SSI.

    **I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The Magistrate Judge's Report contains a thorough recitation of the relevant factual and

1

procedural background of this matter. (See ECF No. 38 at 2–14.) The court concludes, upon its own careful review of the record, that the Report's factual and procedural summation is accurate, and the court adopts this summary as its own. The court will only reference herein background pertinent to the analysis of Plaintiff's claims.

K.J.L. was born on April 3, 2005, and is presently 10 years old. (ECF No. 22-5 at 2.) Plaintiff filed an application on behalf of K.J.L. for SSI on December 20, 2010, alleging disability since January 1, 2009, due to attention deficit/hyperactivity disorder ("ADHD"), sleeping problems, a learning disability, behavioral problems, and weak hand muscles. (Id. at 2; see also ECF No. 22-6 at 42.) Plaintiff's application was denied initially on July 30, 2010, and April 20, 2011, and upon reconsideration on August 29, 2011. (ECF No. 22-4 at 2, 7 & 16.) As a result, Plaintiff requested an administrative hearing on October 6, 2011. (Id. at 19.) On December 3, 2012, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"), William F. Pope, who found on February 1, 2013, that K.J.L. was not under a disability as defined by the Social Security Act ("SSA") because she did "have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." (ECF No. 22-2 at 23 & 27.) Thereafter, the Appeals Council denied Plaintiff's request for review on March 14, 2014, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Id. at 2.)

Subsequently, on April 14, 2014, Plaintiff commenced an action in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim on behalf of K.J.L. for SSI. (ECF No. 1.) On July 8, 2015, the Magistrate Judge issued her recommendation that the Commissioner's final decision denying Plaintiff's claims for SSI be

affirmed. (ECF No. 38.) Plaintiff filed timely Objections to the Magistrate Judge's Report on July 22, 2015. (ECF No. 41.) The Commissioner filed a Response to Plaintiff's Objections to the Report and Recommendation of the United States Magistrate Judge on July 31, 2015, to which Plaintiff filed a Reply to Defendants' Response to Plaintiff's Objection to the Report and Recommendation of the United States Magistrate Judge on August 10, 2015. (ECF Nos. 43 & 44.)

## II.     LEGAL STANDARD

A.     The Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

B.     Judicial Review of the Commissioner

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times

as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." Id. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." Vitek, 438 F.2d at 1157–58.

C.     Children's Disability Benefits

An individual under the age of 18 will be considered disabled if she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; see also 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations establish a three-part evaluation process: (1) determine whether the child is currently engaged in substantial gainful activity. If so, she is not disabled; if not, (2) determine whether the child has a severe impairment or impairments. If not, she is not disabled; if so (3) determine whether the child's impairments meet, medically equal, or functionally equal any impairment listed at 20 C.F.R. pt. 404, subpt. P, app.1 (the "Listings"). If not, she is not disabled. See 20 C.F.R. § 416.924(b)-(d). If the claimant's impairment or combination of impairments do not meet or medically equal the requirements of

4

one of the Listings, the Commissioner will decide whether the impairment or combination of impairments result in limitations that functionally equal such requirements. 20 C.F.R. § 416.926a(a). To assess functional equivalence, the Commissioner considers how the claimant functions in activities in terms of 6 domains, broad areas of functioning intended to capture all of what a child can or cannot do. Id. at § 416.926a(b)(1). These domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. Id.

### III.    ANALYSIS

A.    The Magistrate Judge's Review

In the Report, the Magistrate Judge directly addressed Plaintiff's specified assertions that (1) K.J.L.'s impairments should have resulted in a finding of her disability; (2) the ALJ in making his decision impermissibly relied on non-examining physician reports and did not give enough weight to the opinions of Mark Solnick, Ph.D., K.J.L.'s teachers, and the South Carolina Department of Mental Health ("SCDMH"); and (3) the ALJ failed to observe K.J.L.'s behavior himself and improperly substituted his "own impression of . . . [K.J.L.'s] conduct from uncontroversial medical evidence of competent physicians." (See ECF No. 28 at 2–3, 9 & 13.)

In concluding that substantial evidence supported the ALJ's finding that K.J.L. was not disabled, the Magistrate Judge provided the following comprehensive analysis:

> As required by the regulations, the ALJ considered whether Claimant's [K.J.L.] impairments functionally equaled the Listings and found they did not. See 20 C.F.R. § 416.926a. In making that finding, the ALJ considered each of the six functional domains and concluded that Claimant's limitations were not "marked" in two domains or "extreme" in one domain. Tr. 15-23. The ALJ found Claimant had no limitations in acquiring and using information. Tr. 15-17. In support of this finding, the ALJ cited to Claimant's school records, Plaintiff's hearing testimony, Dr. Way's consultative exam, and Dr. Solnick's test results and found

> "the weight of the evidence is consistent with no limitation, as IQ test scores have returned normal and the claimant's mother admits that the claimant has no deficit now." Tr. 17. The ALJ specifically referenced Plaintiff's testimony that "things were going 'smoothly' at school since the claimant was placed on her recent medications . . . ." Id. The ALJ found Claimant had less than marked limitations in the domain of attending and completing tasks. Tr. 17-18. In support of this finding, the ALJ acknowledged reports of Claimant's problems at school in 2010 with focus, carrying out instructions, completing assignments, working without disturbing others, and in independently performing activities. Tr. 18 (citing Exs. 9E, 18E). The ALJ also noted that Claimant's grades in 2010-2011 show only a few deficits in mathematics, that Claimant successfully participates in her church choir, and that Plaintiff admitted Claimant's ADHD medications were providing considerable benefit. Tr. 18 (citing Ex. 10E). The ALJ further noted Dr. Way's assessment that Claimant was able to remain on-task with appropriate encouragement and Dr. Solnick's description of Claimant as "very calm" and with "good focus towards tasks." Id. (citing Exs. 5F, 13F). The ALJ also noted mental health treatment records showing improvement in Claimant's ADHD symptoms with medications. Id. (citing Ex. 6F). In the domain of interacting and relating with others, the ALJ found Claimant had less than marked limitations. Tr. 19-20. The ALJ found that "Dr. Solnick's characterization of the claimant, the teacher's reports at Exhibit 9E, and the claimant's apparent abilities to participate in group activities with her peers suggest a less than marked limitation." Id. In the domains of moving about and manipulating objects, and caring for herself, the ALJ also found Claimant had less than marked limitations noting that one school report suggested Claimant had a "'serious' problem with moving parts of her body, demonstrating strength, coordination, and dexterity, moving and manipulating things, etc." yet another report indicated Claimant liked to "practice her writing, play outside, and work with Play-Doh." Tr. 21 (citing Exs. 9E, 13E). The ALJ cited Plaintiff's testimony that Claimant was benefitting from occupational therapy, and Dr. Patel's notes that Claimant had good hand grip, normal range of motion in all joints, and was able to walk, hop, and run without difficulty. Id. (citing Ex. 7F). The ALJ noted that while Plaintiff alleged in an April 2010 function report that Claimant could not dress herself or brush her teeth without help, school records did not show a problem with Claimant's ability to care for herself, a 2010 audiological evaluation was normal, and Dr. Way noted Claimant was able to make her needs known verbally. Tr. 22 (citing Exs. 2E, 9E, 3F, 5F). In the domain of health and physical well-being the ALJ found Claimant had no limitations, noting that Plaintiff "offered no allegations that would equate to a limitation within this domain. She admitted that the claimant had no side effects from medications, save for sleep issues that are also managed with medications." Tr. 23.

(ECF No. 38 at 20–22.)

The Magistrate Judge next addressed Plaintiff's arguments that K.J.L. would have been found to be disabled if the ALJ had given more weight to reports from K.J.L.'s teachers,

providers from the SCDMH, and Dr. Solnick as a treating source. (ECF No. 38 at 22–25 (referencing ECF No. 28 at 9–13).) With specific reference to Dr. Solnick, the Magistrate Judge determined that Dr. Solnick's "one-time evaluation of . . . [K.J.L. did] not appear to qualify him as a treating source[1] under the regulations" and "his report does not provide an opinion as to whether . . . [K.J.L.] has an impairment or combination of impairments that meets or medically equals the severity of a Listing that would support a finding of disability." (Id. at 24 (citing ECF No. 22-8 at 108–113).) The Report's review of Dr. Solnick ultimately led the Magistrate Judge to conclude as follows that the treating physician rule was inapplicable to Plaintiff's claims:

> The undersigned finds upon a careful inspection of the record that the record does not, in fact, contain any opinions rendered by Claimant's treating physicians. While Claimant's physicians provided copies of Claimant's medical records containing objective medical evidence, they did not offer opinions in those records; nor did they offer opinions in a separate form on the subjects of the nature and severity of Claimant's impairments. Therefore, there were no treating physician's opinions for the ALJ to take into consideration, and there was no need to apply the treating physician rule. The ALJ considered all of the objective medical evidence provided by Claimant's medical sources and appropriately weighed the evidence, along with the opinions of the state agency physicians who also reviewed the same medical evidence, in concluding that Claimant was not disabled. The undersigned finds the ALJ was not required to apply the treating

---

[1] The Treating Physician Rule requires that if the opinions of a treating source are not adopted as controlling they will be carefully evaluated and contrasted with other medical opinions and evidence in the record pursuant to the specific standards set forth in 20 C.F.R. § 416.927. Section 416.927(c) provides that, if a treating source's opinion is not accorded controlling weight, the ALJ is required to "consider all of the following factors in deciding the weight we give to any medical opinion": (1) examining relationship ("[g]enerally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you"); (2) treatment relationship, including length of treatment relationship, frequency of examination, and the nature and extent of the treatment relationship; (3) supportability ("[t]he more a medical source presents relevant evidence to support an opinion… the more weight we will give that opinion"); (4) consistency; (5) specialization; and (6) other factors. Id. "However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that 'an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision.'" Kirby v. Colvin, No. 4:13-cv-3138-DCN, 2015 WL 1038036, at *3 (D.S.C. Mar. 10, 2015) (quoting Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010)); see 20 C.F.R. § 404.927(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion)

>physician rule where the record did not contain any treating physician opinions and finds the ALJ nevertheless gave thorough consideration to the objective medical evidence supplied by medical and other sources.

(ECF No. 38 at 24–25.) In addition, the Magistrate Judge expressly described why she found that the ALJ appropriately considered the evidence offered by Plaintiff's other sources:

>The ALJ stated that he considered all of the relevant evidence in the case record including "objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, . . . and any other relevant evidence in the case record . . . ." Tr. 14. In analyzing Claimant's functionality under the six domains the ALJ cited to Dr. Solnick's report, medical records from Santee-Wateree Mental Health Center, reports of Claimant's teachers, and Plaintiff's testimony and determined in each category that the "weight of the evidence" was consistent with no limitation or with a less than marked limitation. Tr. 16-23. The ALJ considered the opinions of the state agency examiners under the six domains and gave the "unrebutted" findings "considerable weight" in all categories except for the "marked" finding in Attending and Completing Tasks to which the ALJ attributed "little weight." Tr. 18.

(ECF No. 38 at 24.) As a result, the Magistrate Judge determined that Plaintiff's claim regarding the ALJ's weighing of the evidence was without merit. (Id. at 25.)

In addressing Plaintiff's argument that it was improper for the ALJ to not witness K.J.L.'s behavior in person, the Magistrate Judge observed that "ALJ had ample evidence before him regarding . . . [K.J.L.'s] impairments without having to see . . . [her] behavior in the hearing[,]" which evidence included medical evidence, other source evidence, and Plaintiff's hearing testimony. (Id. at 25.) The Magistrate Judge further observed that the ALJ is "prohibited from substituting his views on medical issues for those of a trained professional." (Id. at 25–26.) Moreover, Plaintiff did not demonstrate what relevant information a live observation of K.J.L. would have provided the ALJ. (Id.)

Based on the foregoing considerations, the Magistrate Judge concluded that the Commissioner's decision was supported by substantial evidence and, therefore, recommended that the court affirm the Commissioner. (Id. at 26.)

B.        <u>Plaintiff's Objections and the Commissioner's Response</u>

Objections to the magistrate judge's report and recommendation must be specific. <u>See</u> <u>U.S. v. Schronce</u>, 727 F.2d 91, 94 & n.4 (4th Cir. 1984) (failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge); <u>see also</u> <u>Camby</u>, 718 F.2d at 199 (in the absence of specific objections to the report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation).

In her Objections, Plaintiff first provided the court with her interpretation of the relevant regulatory standards and case law in addition to background regarding K.J.L. (<u>See</u> ECF No. 41 at 2–14.) Plaintiff next argued that K.J.L.'s medical records establish her disability, which "should have been granted . . . at the initial application" pursuant to the attending physician's rule. (<u>Id.</u> at 14.) As to this issue, Plaintiff further argued that the ALJ erroneously disregarded and discounted the fact that K.J.L.'s "physician performed psychological testing on claimant and found her to have ADHD, language delay, and mild intellectual disability, it is well documented that claimant qualified for and would benefit from special education or IEP classes of which she is now enrolled in." (<u>Id.</u> at 15.) Immediately after the aforementioned, Plaintiff then argued that the ALJ, the Commissioner, and the Magistrate Judge all "failed to consider the combined effects of . . . [K.J.L.'s] impairments . . . ." (ECF No. 41 at 15.) In this regard, Plaintiff asserted that K.J.L.'s impairments were different from "children of her same age or in her age bracket" as indicated by the following behavioral description:

> Mrs. Anderson, . . . [K.J.L.'s] teacher stated that she have a slight problem or an obvious problem in the following areas: paying attention when spoken to directly; sustaining attention during play/sports activities; focusing long enough to finish assigned activity or task; refocusing to a task when necessary; carrying out multi-step instructions; waiting to take turns; changing from one activity to another without being disruptive; organizing own things or school materials; completing

9

> class/homework assignments; completing work accurately without careless mistakes; working without distracting self or others; and working at reasonable pace/finishing on time. She stated that these problems occur daily.
>
> Mrs. Anderson also states that . . . [K.J.L.] has a problem with asking permission appropriately; following rules; respecting/obeying adults in authority/taking turns in conversations. She states that . . . [K.J.L.] requires individual help. She works in small groups daily and extra help is needed on learning activities. This would not be the same with normal children in her age bracket. She has serious problems, according to Mrs. Anderson moving [her] body from one place to another, standing, balancing, shifting weight, bending, kneeling, crouching, walking, running, jumping, and climbing.

(ECF No. 41 at 15–16.)

Because of the foregoing, Plaintiff asserted that the court should strike the Report and reverse the Commissioner's decision. (Id. at 18.)

In response to Plaintiff's Objections, the Commissioner asserts that Plaintiff's Objections should be denied because she "essentially argues that the Magistrate Judge erred in not accepting the arguments made in her initial brief." (ECF No. 43 at 1.) Moreover, because "[t]he Magistrate Judge properly concluded that the ALJ's decision was supported by substantial evidence[,]" the court should adopt the Report. (Id. at 2.)

C.     The Court's Ruling

Upon review of the Report, the court finds that the Magistrate Judge performed a thorough analysis of the record. In this regard, the court agrees with the Magistrate Judge that the ALJ's decision complies with the regulatory scheme and gives the proper weight, treatment, and consideration to the evidence in this case. In her Objections, Plaintiff merely rehashes arguments that were properly considered and rejected by the Magistrate Judge. (Compare ECF No. 28 at 9–13 and ECF 41 at 14–17.) Therefore, the court overrules Plaintiff's Objections because they do not suggest any new arguments that would cause the court to reject the Magistrate Judge's analysis and recommendation. Felton v. Colvin, C/A No. 2:12-cv-558, 2014

WL 315773, at *7 (E.D. Va. Jan. 28, 2014) ("The Court may reject perfunctory or rehashed objections to R & R's that amount to 'a second opportunity to present the arguments already considered by the Magistrate–Judge.'") (quoting Gonzalez–Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D.P.R. 2005)).  The court further concludes in agreement with the Magistrate Judge that substantial evidence supports the decision of the Commissioner that Plaintiff was not disabled within the meaning of the SSA during the relevant time period.

## IV.     CONCLUSION

Upon careful consideration of the entire record, the court **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for Supplemental Security Income.  The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 38) and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 28, 2015
Columbia, South Carolina